## MAZIE SLATER KATZ & FREEMAN, LLC

COUNSELLORS AT LAW

103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898
Fax (973) 228-0303
www.mskf.net

David A. Mazie*†
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

†Certified as a Civil Trial Specialist
by the National Board of
Trial Advocacy

Writer's Direct Dial: 973-228-0151

February 7, 2012

Counsel
Beth G. Baldinger°

Matthew R. Mendelsohn°
John D. Gagnon°
Karen G. Kelsen°
Cheryll A. Calderon
Andrew S. Riso°

°Member of N.J. & N.Y. Bars

**VIA ECF**
Honorable Claire C. Cecchi, U.S.D.J.
United States District Court
50 Walnut Street
Newark, New Jersey 07101

      Re:    North Jersey Brain & Spine Center v. Anthem Blue Cross Blue Shield
              Civil Action No.: 11-06379 (CCC)(JAD)

Dear Judge Cecchi:

      We represent plaintiff North Jersey Brain & Spine Center ("NJBSC") in the above-captioned matter. Please accept this letter in lieu of a more formal brief in opposition to the motion to dismiss filed by defendant Anthem Blue Cross Blue Shield ("BCBS"). As we address herein, NJBSC's ERISA claims against BCBS -- pled in the Fourth Count (29 U.S.C. §1132(a)(1)(B)) and Fifth Count (29 U.S.C.§ 1132(g)(1)) of plaintiff's Complaint -- should be allowed to proceed in this Court.[1] Specifically, in Point III of its brief at pages 13-15, BCBS

---

[1] NJBSC does not oppose defendant's motion to dismiss as it pertains solely to plaintiff's state law claims pled in the First Count (promissory estoppel), Second Count (negligent misrepresentation) and Third Count (unjust enrichment). NJBSC acknowledges that in this

Honorable Claire C. Cecchi, U.S.D.J.
February 7, 2012
Page 2

erroneously contends that plaintiff's ERISA claims are premature and should be stricken because NJBSC failed to exhaust the administrative remedies set forth in the member's plan documents.

While it is true that the Third Circuit generally requires exhaustion of the administrative process before the right to file an ERISA §502 action is triggered, it is long settled that a plaintiff will be excused from exhausting such remedies when it would be futile to do so. Several courts have addressed the grounds that support the futility argument and, in sum, to determine whether administrative remedies would be futile, this Court should consider several factors, including:

  (1) whether plaintiff diligently pursued administrative relief;
  (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances;
  (3) existence of a fixed policy denying benefits;
  (4) failure of the insurance company to comply with its own internal administrative procedures; and
  (5) testimony of plan administrators that any administrative appeal was futile.

See DeVito v. Aetna, Inc., 536 F. Supp. 2d 523, 532 (D.N.J. 2008), citing Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002). In addition, "all [Harrow] factors may not weigh equally." DeVito, 536 F. Supp. 2d at 532.

In the case at bar, it is clear that NJBSC satisfies factors (2) and (4). As addressed at length in the accompanying Certification of Lee Goldberg, NJBSC's billing and financial manager ("Goldberg Cert."), plaintiff acted reasonably in requesting judicial intervention of its dispute because the failure of BCBS to follow its own internal administrative procedures simply made it impossible to file any kind of meaningful appeal of the supposed final adjudication of the subject claim. **This is because BCBS never issued an appropriate claim denial, identifying**

---

particular case, given the facts involved, plaintiff's state law claims would be preempted by ERISA. However, NJBSC's acknowledgement should not be construed as a concession that these state law claims may not be pursued in other instances unfettered by ERISA preemption.

which surgical services were actually being denied reimbursement and setting forth the reasons for the denials. Consequently, it would have been utterly futile to even attempt to file an appeal, and hazard a guess as to what should be appealed and why, leaving NJBSC no other reasonable option but to file an ERISA enforcement action to be paid for its services.

As Ms. Goldberg testifies in her Certification:

- On October 14, 2010, NJBSC's surgeons performed complex emergency spinal surgical procedures on patient B.R., a BCBS subscriber. The surgery involved several distinct services (denoted by CPT Codes) including a lumbar laminectomy and infection debridement.[2]

- On or about November 11, 2010, NJBSC submitted its bill for payment to BCBS, documenting the <u>six specific procedures</u> (CPT Codes) rendered as part of the surgical intervention performed on the patient.

- On or about March 2, 2011, NJBSC received an Explanation of Benefits ("EOB") denying reimbursement for only <u>three of the services</u> billed on the arbitrary and capricious grounds that NJBSC billed such services using an "invalid" co-surgery modifier. Significantly, however, the EOB did <u>not</u> even mention -- let alone adjudicate -- the other three surgical services rendered, which included the most significant procedures performed on the patient. It was thus impossible to know whether reimbursement of these procedures was even considered, let alone denied by BCBS.

- Following receipt of the EOB, Ms. Goldberg went online into a system called NaviNet to determine the claim status of the remaining three services not addressed in the EOB and determined that they had been the subject of an "internal administrative decline. No EOB generated." Because no EOB was ever generated, NJBSC does not know if the remaining services were ever processed, let

---

[2] Certain industry terms referenced herein are defined in Ms. Goldberg's Certification.

Honorable Claire C. Cecchi, U.S.D.J.
February 7, 2012
Page 4

> alone reimbursement denied and the basis or bases for such denials.
>
> - NJBSC's right to appeal a claim denial is triggered <u>only</u> after a "claim is denied in whole or in part." Because BCBS did not follow its own internal appeal procedures and actually <u>deny</u> the claim setting forth the reasons for the denial, it is impossible for NJBSC to coherently or logically formulate its appeal when plaintiff does not know what basis or bases upon which it may rely to substantiate its appeal of the purported "denial" of reimbursement for the significant spinal surgical procedures rendered to B.R.

(<u>See</u> Goldberg Cert. at ¶¶ 2-7).

Notably, the Third Circuit has held that "the failure to exhaust will be excused in cases where a fact-sensitive balancing of [the <u>Harrow</u>] factors reveals that exhaustion would be futile." <u>Metropolitan Life Ins. Co. v. Price</u>, 501 F.3d 271, 279 (3d Cir. 2007).[3] Moreover, ERISA's exhaustion requirement "involves a discretionary balancing of interests [in] its application in a given case." <u>Id</u>.

Here, it is respectfully submitted that this Court should exercise its discretion and, based on the application of the facts to the <u>Harrow</u> factors, find that it would have been and continues to be futile for NJBSC to proceed with BCBS's internal appeal mechanism, when not only has BCBS failed to comply with its own procedures but, equally significant, NJBSC cannot possibly know what it is appealing from and what grounds upon which it could substantiate its appeal of the supposed "denials" of reimbursement for the services rendered to the patient.

---

[3] See <u>Dunn v. Honeywell, Int'l, Inc.</u>, Civil Action No. 11-2810 (DMC)(CLW), January 31, 2012 at <u>Slip Op</u>. 8 (where Judge Cavanaugh denied the defendant's motion to dismiss ERISA enforcement action on the alleged grounds that the plaintiff failed to exhaust administrative remedies because of "a question of fact" as to whether an administrative appeal would have been futile) (attached hereto as Exhibit "A").

Consequently, BCBS's motion to dismiss plaintiff's ERISA claims on the ground of failure to exhaust administrative remedies should be denied and NJBSC should be permitted to pursue its ERISA claims in this Court.

Respectfully,

ERIC D. KATZ

EDK/av
Encl.
cc: All counsel (via ECF)
H:\EDK\Comp Neuro\Anthem - Rogalski\Cecchi ltr 1-17-12.doc

# EXHIBIT A

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHERRIL A. DUNN and THOMAS A. DUNN, individually and on behalf of all other similarly situated individuals, | Hon. Dennis M. Cavanaugh |
| Plaintiffs, | OPINION |
| v. | Civil Action No. 11-cv-2810 (DMC)(CLW) |
| HONEYWELL INTERNATIONAL, INC. and BRIAN J. MARCOTTE, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on the Motion of Defendants Honeywell International, Inc. ("Honeywell") and Brian J. Marcotte ("Marcotte") to Dismiss the Complaint of Plaintiffs Sherril A. Dunn and Thomas A. Dunn ("Plaintiffs"). ECF No. 21. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion is **denied**.

## I.   BACKGROUND[1]

This matter involves Defendants' allegedly unlawful practice of paying less for health care service reimbursements than was agreed under the terms of health care benefit plans. Plaintiffs are

---

[1] The facts in the Background section have been taken from the parties' submissions. On this Motion to Dismiss, the Court will accept the factual allegations in the Complaint as true and construe all facts in Plaintiffs' favor.

Sherril A. Dunn, an employee of Honeywell and a subscriber to Honeywell's health care plan, and Thomas A. Dunn, a beneficiary under the health care plan. Compl. ¶ 93, ECF No. 1. Defendant Honeywell is a Delaware Corporation that produces a variety consumer products and services. Compl. ¶¶ 4, 20. Defendant Marcotte is Honeywell's Vice President of Compensation and Benefits, and the named Plan Administrator for Honeywell's medical welfare benefit plan. Compl. ¶ 5.

Honeywell maintains the Honeywell International Inc. Benefit Plan and the Honeywell International Inc. Retiree Medical Plan (collectively, the "Plans") for the benefit of certain eligible employees, retirees, and their dependants. Compl. ¶¶ 4, 5, 14, 15, 20. The Plans are employee welfare benefit plans under the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.* The claims in this case concern Defendants' practices in calculating benefits under the Plans.

Honeywell's Plans differentiate between coverage for medical treatment from "in-network" providers who have negotiated discount rates with Honeywell's claims administrator, and coverage for treatment from "out-of-network" ("ONET") providers who charge Honeywell's plan participants their usual, non discounted rates. Compl. ¶ 27. When Honeywell plan participants receive ONET services, Honeywell's payment for those services is based on a percentage of the lesser of either the billed charge, or what Honeywell's plan documents refer to as the "Reasonable and Customary" rate for the service received. Compl. ¶ 28. In cases where the ONET provider bills in excess of what Honeywell pays through the Plans, the Honeywell plan participant is responsible for the balance. Compl. ¶ 27.

The Plans state that in determining the Reasonable and Customary rate, the Honeywell Plan Administrator takes into account "all pertinent factors," including the nature and severity of the

condition treated, the complexity of the service, the range of services provided, and the prevailing charge level in the geographic area where the provider is located and other geographic areas having similar medical cost experience. Compl. ¶ 28. The Complaint focuses, however, on the data underlying the "pertinent factors" relied on by Defendants, and provides a brief overview of the data's history, as well as its inherent flaws.

In 1973, the Health Insurance Association of America ("HIAA") created a database known as the Prevailing Health Charges System ("PHCS") as a way to aggregate and compile physician charge data. Compl. ¶ 31. To create this database, HIAA collected information from its member insurers that consisted of only four data points: the date of the service, the Current Procedural Terminology Code ("CPT Code"), the billed charge, and the "geo-zip."[2] Compl. ¶ 33. According to the Complaint, however, HIAA expressly stated that the PHCS data was not intended to be used to establish Reasonable and Customary rates. Compl. ¶ 36.

In 1998, HIAA sold PHCS to Ingenix, a nationwide health care information company that sells customized fee analyzers. Compl. ¶¶ 30, 41. In addition to PHCS, Ingenix acquired another provider charge database known as "MDR" from Medicode, Inc. in 1997. Compl. ¶ 42. Ingenix keeps these databases separate, but merged the underlying data. Compl. ¶ 43. According to the Complaint, Ingenix uses its databases to create uniform claims pricing schedules, which provide reimbursement amounts for given price percentiles of various medical procedures in localized geographic areas. Compl. ¶ 30. Ingenix provides these pricing schedules to a number of entities, including Honeywell. Compl. ¶ 30.

---

[2] CPT Codes are a system by which the American Medical Association categorizes all medical services by five-digit codes. Compl. ¶ 34. Geo-zips are portions of states comprised of cities and towns sharing the first three-digits of a postal zip code. Compl. ¶ 34.

Honeywell uses information from the Ingenix databases to determine Reasonable and Customary rates for ONET claims. Compl. ¶ 10, 46.[3] Ingenix includes a disclaimer with its semi-annual database updates, however, which states that "[t]he Ingenix data . . . are provided to subscribers for informational purposes only. Ingenix, Inc. disclaims any endorsements, approval or recommendation or particular uses of the data. There is neither a stated nor an implied 'reasonable and customary charge' (either actual or derived)." Compl. ¶ 47. According to the Complaint, Defendants have been aware of this disclaimer throughout the relevant period, but used the information to determine Reasonable and Customary rates regardless, and did not disclose the substance or existence of this disclaimer to the Honeywell plan participants. Compl. ¶¶ 46, 48.

In addition to the minimal data points used to created the Ingenix databases, the Complaint indicates a number of other problems with the Ingenix databases. First, the Complaint states that the method used to collect data is not scientifically valid, as it relies on a sampling method known as "convenience sampling." Compl. ¶¶ 50, 52. Second, the Complaint asserts that before claims data is submitted to Ingenix, that data is "scrubbed" to remove the highest charges, and once Ingenix compiles the data, it is "scrubbed" again. Compl. ¶¶ 58, 66-68. Further, the Complaint asserts that Ingenix "manipulates modifiers," relies on flawed geo-zips, and relies on flawed derived data. Compl. ¶¶ 62, 63-65, 69-74.

Plaintiffs alleged that Defendants relied on this flawed and inappropriate data to make Reasonable and Customary rate deductions for Plaintiffs' ONET benefits. Compl. ¶ 94.

---

[3]Honeywell contracts with various third party administrators ("TPAs") to determine healthcare reimbursement claims, including reimbursement claims. Compl. ¶ 10. Such TPAs contracted with Ingenix to obtain ONET claims data and receive ONET pricing schedules. Compl. ¶10.

Specifically, Sherril A. Dunn alleges that she received health care services from Steven P. Brown, a chiropractor, acupuncturist, and physiotherapist, and from Craig A. Blankinship, a physiotherapist. Compl. ¶ 95. Sherril A. Dunn states that Explanations of Benefits ("EOBs") showing Reasonable and Customary rate deductions for services provided by Steven P. Brown were processed between at least June 30, 2006 and February 2, 2007 for services performed between June 19, 2006 and October 25, 2006. Compl. ¶ 95. EOBs showing Reasonable and Customary rate reductions for services provided by Craig A. Blankinship were processed between at least May 23, 2007 and June 20, 2007, for services performed between May 15, 2007 and June 13, 2007. Compl. ¶ 95. Thomas A. Dunn states that he suffered improper Reasonable and Customary rate reductions in 2009 after he received health care services from Greg J. Bogel, a chiropractor. Compl. ¶ 96. An EOB showing these reductions was processed on November 3, 2009 for services performed on September 18, 2009. Compl. ¶ 96.

The Plans provide an appeals procedure to employees who feel that Honeywell improperly denied them benefits. Plaintiffs did not complete this administrative appeals procedure. Compl. ¶ 98. Plaintiffs state, however, that any such appeal would have been futile, as their reductions would have simply been reviewed using the same flawed data. Compl. ¶ 98.

Plaintiffs state that Defendants misrepresented the nature of their ONET reimbursement to Plan participants, and actively and fraudulently concealed the true ONET reimbursement claims data. Compl. ¶¶ 100-107. Plaintiffs assert that concerns about the allegedly flawed Ingenix databases did not become public knowledge until January 13, 2009, following an investigation into and report on the matter by then Attorney General of the State of New York Andrew M. Cuomo. Compl. ¶ 78. Plaintiffs filed their Complaint in the Southern District of California on January 10, 2011. On May

17, 2011, the case was transferred to this District. ECF No. 14. Defendants filed the present Motion on July 1, 2011, contending that Plaintiffs failed to exhaust the Plans' administrative remedies, and that Sherril A. Dunn's claims are barred by the Plans' two year statute of limitations period. Plaintiffs filed Opposition on July 22, 2011. ECF No. 23. Defendants filed a Reply on August 5, 2011. ECF No. 26. The matter is now before this Court.

## II. STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Bell Atl. Corp., 550 U.S. at 555.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

"Except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential Ins. Co. of

America, 279 F.3d 244, 249 (3d Cir. 2002) (citing Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990)). The purpose of the judicially created doctrine requiring exhaustion of administrative remedies is "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Id. (citing Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)).

A plaintiff need not exhaust their administrative remedies, however, if it would be futile to do so. Id. (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)). In order to make use of this exemption, a plaintiff must demonstrate a "clear and positive showing of futility." Id. (citing Brown v. Cont'l Baking Co., 891 F.Supp. 238, 241 (E.D.Pa. 1995)). Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

Id. Such factors need not always weigh equally. Id.

Plaintiffs admit that they did not exhaust their administrative remedies through the Plans' appeal process. Defendants argue that Plaintiffs should therefore be barred from now pursuing their claims in federal court, as they have made only a "bare assertion," and not a "clear and positive showing" of futility. Defs.' Mot. Br. 12, ECF No. 21-1. In their Opposition, Plaintiffs rely heavily on the Harrow factor of the existence of a fixed policy denying benefits. Pls.' Opp'n. Br. 9. As discussed above, the Complaint thoroughly details the manner in which Defendants' Reasonable and Customary rates determinations rely on flawed and insufficient data. The Complaint additionally

asserts that "[a]ccurate [Reasonable and Customary rate] determinations by Honeywell are impossible because Defendants rely solely on Ingenix's flawed data in making health benefit reimbursement determinations, both initially and on appeal." Compl. ¶ 98. For this reason, Plaintiffs argue that any appeal of the denial of benefits would be futile, since Defendants would simply rely on the same flawed data and methodology a second time, bringing about the same result. Pls.' Opp'n Br. 14. Defendants take issue with this argument, countering that "[c]ontrary to Plaintiffs' assertion, the Plans do not require that the Ingenix database be used in making ONET reimbursement determinations; rather, the Plans mandate that the Plan Administrator . . . [take] into account all pertinent factors." Defs.' Reply Br. 3. This seems to the Court a question of fact. At this stage of the litigation, the parties do not have benefit of discovery, and the Court is required to accept the factual allegations in the Complaint as true and construe all facts in Plaintiffs' favor. Plaintiffs have sufficiently alleged that Defendants have what amounts to a fixed policy of denying benefits, which could therefore render exhaustion of administrative remedies futile. Defendants' argument, therefore, does not hold merit at this time.

### B. The Plans' Statute of Limitations Period

Defendants also argue that Plaintiff Sherril A. Dunn's claims are barred by the Plans' limitations period. ERISA does not specify a statute of limitations for the filing of benefit claim litigation. Klimowicz v. Unum Life Ins. Co. of America, 296 F. App'x 248, 250 (3d Cir. 2008). Instead, Courts will "borrow" the state statute of limitations most analogous to the claim at hand. Id. (citing Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 305-06 (3d Cir. 2008)). The statute of limitations for a breach of contract claim in New Jersey is six years. N.J. Stat. Ann. §

2A:14-1. "Parties may, however, contract for a shorter limitation period, as long as the contractual period is not manifestly unreasonable." Klimowicz, 296 F. App'x at 250 (citing Hosp. Support Servs., Ltd. v. Kemper Group, Inc., 889 F.2d 1311, 1314 (3d Cir. 1989)).

Defendants state that the parties contracted for a specific limitations period, as stated in the Plans "Summary Plan Descriptions" ("SPDs"). In this case, the Plans specifically provide for a two-year limitations period, stating:

> If you wish to file a lawsuit against the Plan, Honeywell, the Plan Administrator, the Claims Administrator, the Appeals Administrator or any other Plan fiduciary, your lawsuit must be filed no later than the second anniversary of one of the following, as applicable: (1) if the Claims or Appeals Administrator approves the disputed claim, the date the claim is approved, (2) if the Appeals Administrator denies the disputed claim, the date the claim is denied, or (3) if neither (1) nor (2) applies, the date you know or should reasonably know the claim is denied (e.g., through an explanation of benefits denying the claim or through a denial of the claim by the Claims Administrator).

Ex. 1 to Dec. of Amy Covert ("Covert Dec.") at 2-15, ECF No. 21-3. Defendants point to Plaintiff Sherril A. Dunn's admission that she received EOBs showing Reasonable and Customary rate reductions for ONET services, and that these EOBs were processed between June 30, 2006 and February 2, 2007, and between May 23, 2007 and June 20, 2007. Defs.' Mot. Br. 21; Compl. ¶ 95. Defendants thus state that Plaintiff Sherril A. Dunn's claims accrued "as early as June 30, 2006, and no later than June 20, 2007," since at this point she "knew or should have known that her claims were denied." Defs.' Mot. Br. 21. For this reason, Defendants argue that since Plaintiff Sherril A. Dunn did not file her Complaint until January 10, 2011, more than two years since the accrual of her cause of action, her claims are time barred. Defs.' Mot. Br. 21.

Plaintiffs contend that Defendants' statute of limitations argument fails for two reasons.

First, Plaintiffs argue that Plaintiff Sherril A. Dunn's claims did not accrue until January 13, 2009, at the earliest. Pls.' Opp'n Br. 27. Second, Plaintiffs contend that even if the claims did accrue as early as June 30, 2006, those claims are governed by New Jersey's six year contract statute of limitations period, as the two year period provided for in the plans is unreasonable. Pls.' Opp'n Br. 34. For the sake of clarity, the Court will briefly address Plaintiffs' length of limitations period argument first, and then turn to the question of when Plaintiff Sherril A. Dunn's claims accrued.

The Court does not find the parties' contractually agreed to two-year limitations period to be manifestly unreasonable. In asserting that New Jersey's six-year statute of limitations period should govern the claims at issue, Plaintiffs rely heavily on McVicker v. Blue Shield of Cal., No. 06-4856, 2007 WL 3407433 (N.D. Cal. Nov. 13, 2007). Pls.' Opp'n Br. 35-36. Plaintiffs note that in McVicker, the Northern District of California held that while "a one year reduction in a four-year statute of limitations period may be reasonable; halving a four-year statute of limitations is a different matter." Pls.' Opp'n Br. 36 (citing McVicker, 2007 WL 3407433 at *6). Plaintiffs argue that "[t]he same is even more true here, where the contract's limitations period is reducing the statute of limitations not by half but by two-thirds – reducing a six-year statute of limitations to merely two years. This is unreasonable." Pls.' Opp'n Br. 36. Defendants have presented this Court, however, with case law from the District of New Jersey upholding a two-year limitations period similar to the one at issue in this case. See, e.g., Stallings v. IBM Corp., No. 08-3121, 2009 WL 2905471 at *4 (D.N.J. Sept. 8, 2009) (stating "nothing about the two year limitations period is 'manifestly unreasonable' . . . ."); see also Klimowicz, 296 F. App'x at 251 (upholding three-year statute of limitations period). This Court therefore finds Plaintiffs' argument to be unpersuasive, and agrees with the Stallings decision that the two-year limitations period at issue is not manifestly

unreasonable.

Whether or not this two-year limitations period bars Plaintiff Sherril A. Dunn's claims, however, depends on when those claims accrued. "The Third Circuit applies the 'discovery rule' to determine when a cause of action arises for statute of limitations purposes." Stallings, 2009 WL 2905471 at *7 (citing Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 (3d Cir. 2007)). Under the discovery rule, the statute of limitations period begins to run only when "a plaintiff discovers or should have discovered the injury that forms the basis of his claim." Miller, 475 F.3d at 520. "In the ERISA context, the discovery rule has been 'developed' into the more specific 'clear repudiation' rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied." Stallings, 2009 WL 2905471 at *7 (citing Miller, 475 F.3d at 520). The clear repudiation rule does not require a formal denial or even a formal application, rather the rule only requires a "clear" repudiation that is made known to the plaintiff. Id. (citing Miller, 475 F.3d at 521).

Defendants contend that Plaintiff Sherril A. Dunn "received EOBs communicating the Plans' formal, written determinations denying payment for a portion of the charges assessed by her ONET providers," and that the date of receipt of these EOBs constitutes a clear repudiation of her claim for greater reimbursement. Defs.' Reply Br. 11. While Plaintiff Sherril A. Dunn does admit that she received the EOBs, and that those EOBs demonstrated Reasonable and Customary rate related deductions, the date of her receipt of the EOBs is not the proper date of accrual in this case. Plaintiffs' case is grounded in alleged flaws in Defendants' reimbursement computation practices. As the Complaint sufficiently details, Plaintiffs were not even aware of these flaws until investigations by the New York Attorney General became public on January 13, 2009. The Court will not require Plaintiffs to commence a cause of action before they were even aware of the grounds

on which their cause of action rests. See, e.g., Miller, 475 F.3d at 522 n.4 (holding plaintiff's claim accrued upon receipt of erroneously calculated award, but noting that "[s]ignificantly, at oral argument, [the plaintiff's] attorney could point to no facts that he would pursue in discovery upon remand to help establish that [the plaintiff] had reason to be unaware in 1987 that there was an error."). As the Third Circuit has noted, ERISA does not require "plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses." Miller at 522 (citing Romero, 404 F.3d at 224). That is exactly the concern implicated by this case. For this reason, the Court finds that Plaintiffs' claims did not accrue until January 13, 2009, at the earliest, and Sherril A. Dunn's cause of action is therefore not barred by the two-year limitations period.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint is **denied**. An appropriate Order accompanies this Opinion.

S/Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:     January   31  , 2012
Orig.:    Clerk
cc:       All Counsel of Record
          Hon. Cathy L. Waldor, U.S.M.J.
          File