**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER<br><br>Plaintiff,<br><br>vs.<br><br>ANTHEM BLUE CROSS BLUE SHIELD<br><br>Defendant. | Civil Action No.: cv-06379-CCC-JAD<br><br>CERTIFICATION OF LEE GOLDBERG |

LEE GOLDBERG, of full age, hereby certifies as follows:

1. I am the billing and financial manager for plaintiff North Jersey Brain & Spine Center ("NJBSC"). I make this Certification in opposition to the motion to dismiss filed by defendant Anthem Blue Cross Blue Shield ("BCBS") on the ground that NJBSC failed to exhaust administrative remedies. This Certification is based on personal knowledge.

2. NJBSC is a non-participating, out-of-network neurosurgical provider. On October 14, 2010, one of NJBSC's surgeons performed complex emergency spinal surgical procedures on patient B.R., a BCBS subscriber. The surgical services rendered to the patient included, among other procedures, a lumbar laminectomy, partial discectomy,

posterior instrumentation and debridement for an infection that had developed following prior surgical intervention. (See Operative Report attached hereto as Exhibit "A," with the patient's identifying information redacted).

3. On or about November 11, 2010, NJBSC submitted its bill for payment to BCBS, through the local "Blues" plan (Horizon Blue Cross Blue Shield), as required. (See HCFA-1500 Claim Form attached hereto as Exhibit "B," with patient identifying information redacted). Specifically, NJBSC billed six CPT codes,[1] requesting reimbursement for the following surgical procedures that were rendered to B.R.: 22612-62 (posterior lumbar transverse process), 22614-62 (posterior lumbar transverse process-additional vertebral segment), 63042-62 (lumbar laminectomy), 22842-62 (posterior segmental instrumentation), 20936-62 (spine surgery autograft) and 20930-62 (spine surgery allograft).

4. On or about March 2, 2011, NJBSC received an Explanation of Benefits ("EOB") denying reimbursement for <u>three</u> of the CPT codes billed. According to the EOB, payment was denied because NJBSC used an "invalid" modifier.[2] **Significantly, however, the EOB did not address the remaining three CPT codes, which included the most significant procedures rendered to the patient. In fact, these other CPT**

---

[1] CPT codes, developed and licensed by the American Medical Association, are the numerical codes that are descriptors for the medical/surgical services performed, and are uniformly recognized by the managed care industry, including BCBS.

[2] Modifiers are combinations of two characters, letters or alphanumeric codes that are meant to convey additional information regarding the procedure or services offered by the physician and are appended to CPT codes. Here, NJBSC's use of modifier "62," denoted that the procedures performed by our surgeon qualified as "co-surgery," a <u>valid</u> and accepted modifier in the industry for the services rendered to this patient. Thus, BCBS's denial of payment was grossly erroneous.

**codes -- 22612-62, 22614-62 and 63042-62 -- are not even mentioned in the EOB.** (See EOB attached hereto as Exhibit "C," with patient identifying information redacted).

5. Following receipt of the incomplete EOB, I went online into a system called NaviNet to determine the claim status of the remaining three CPT codes that were not addressed in the EOB and, according to the online status detail, CPT codes 22612-62, 22614-62 and 63042-62 were the subject of an "internal administrative decline. No EOB generated." (See NaviNet on-line claim status detail, attached hereto as Exhibit "D," with patient identifying information redacted). Because a complete EOB was never generated, NJBSC does not even know if the other three CPT codes were ever processed, let alone reimbursement for the codes denied and the basis or bases for such denials.

6. In short, NJBSC has never received an EOB setting forth the final claims adjudication for all of the services billed, whether BCBS was denying reimbursement for all of the services and, if so, the specific reasons for the denials. **This is significant because NJBSC's right to appeal is only triggered after a "claim is denied in whole or in part." (See Declaration of Cindy Butler, BCBS Legal Specialist at ¶7 (D.E. 6-2)). Because BCBS did not follow its own internal appeal procedures, NJBSC is completely in the dark as to whether reimbursement for half the claim was, in fact, denied and, if so, the reasons for the denials and how such denials would relate to the denials issued as to the other services provided to the patient during the same surgical intervention.**

7. Moreover, as a practical matter, it would be utterly futile, and indeed impossible, to appeal the subject claim, assuming that an "administrative decline" could be construed as a "claim denial" under the plan, as NJBSC could not possibly

know the grounds from which to formulate its appeal. Put another way, unless BCBS provides us the specific reasons why it is denying reimbursement for all of the CPT codes in this integrated surgery, NJBSC is in no position whatsoever to draft a coherent and logical appeal founded on substantive grounds. Consequently, NJBSC reasonably determined that it had no other options but to institute litigation against BCBS seeking payment for all services rendered to the patient.

8. For all of these reasons, defendant's motion to dismiss for NJBSC's alleged failure to exhaust administrative remedies should be denied.

I hereby certify that the foregoing statements made by me are true, I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
LEE GOLDBERG

Dated: February 7, 2012

Exhibit A

This report is in a draft status until authenticated by the responsible provider.

THE VALLEY HOSPITAL                                          OPERATIVE RECORD

ACCT #: V007204067                                           PATIENT LOC: C.4A

REPORT #: 1015-0228

PATIENT: R_____, B_____            MR # M0690963

SURGEON: Arnold Criscitiello, M.D.

CO-SURGEON: DANIEL WALZMAN, M.D.

ASSISTANT:

DATE OF OPERATION: 10/14/2010

TYPE OF OPERATION: LAMINECTOMY L3-4, DEBRIDEMENT OF DISK TISSUE WITH PARTIAL DISKECTOMY OF REMAINING DISK TISSUE OF L3-4 WITH BIOPSY AND CULTURE OF THE DISK TISSUE FOR SPECIMEN AND CULTURES, POSTERIOR FUSION LATERAL GUTTER L2, L3 AND L4, POSTERIOR INSTRUMENTATION CONSTRUCT PEDICLE SCREWS L2, 3, 4, 5, S1 WITH A CROSS LINK HOOKING UP THE L4-S1 ROD TO THE L2 TO L4 ROD. AN ALLOGRAFT AND AUTOGRAFT, MORSELIZED, WERE USED IN THE LATERAL GUTTERS, REMOVAL OF THE ELECTRIC BONE STIMULATOR THAT WAS PLACED FOR PREVIOUS BONE GRAFTING. WE USED INTRAOPERATIVE X-
RAY, C-ARM RADIOGRAPHY. WE USED MICROSCOPIC VISUALIZATION AND WE INSPECTED THE FUSION OF THE L4-5 REGION AS WELL.

ANESTHETIST:

ANESTHESIA: General endotracheal.

PRE-OPERATIVE DIAGNOSIS: Osteomyelitis and diskitis of L3-4.

POST-OPERATIVE DIAGNOSIS: Osteomyelitis and diskitis of L3-4.

GROSS FINDINGS/INDICATIONS: The patient is 52 years old and was admitted because of back pain and was found to have MRSA in his blood. He was started on antibiotics, and, ultimately, a CT scan showed significant degeneration of the L3-4 disk with only a question of osteomyelitis and disk infection at that level of L3-4. MRI could not be done because of a defibrillator that he had placed. We assumed the possibility of infection and, therefore, placing the TLSO brace. He remained stable until about 4-5 days ago when the patient noted some numb, tingling sensation in his foot. He then noticed that he started to shuffle in the last 4-5 days. On exam he was found to have a change in his neurologic status to a significant weakness in the right foot. Specifically, he had a drop foot of about 0 to 1 out of 5 on the right of both tibialis anterior and EHL. All of the new motor groups were intact about 5- out of 5. On the left side his motor varied, on some days it was 5- out of 5 for tibialis anterior as a example, other days it was 4+ out of 5 on the left side compared to the right. Although he noted numb, tingling sensations he had good sensation in all motor groups in the lower extremities. With this change in motor strength and the possibility of epidural infection, he was brought to the operating room. What we did find on a repeat CT scan was that the vertebral bodies started to show erosion of the L3-L4 end plate regions, but the CT was not able tell us if there was any abscess or significant stenosis.

Valley Hospital PCI  *LIVE* (PCI: OE Database VAH)               DRAFT COPY

Run: 10/18/10-09:38 by Vuijst,Elizabeth                          Page 1 of 4

This report is in a draft status until authenticated by the
responsible provider.

PATIENT: R██████, B██████                           UNIT #: M0690963
ATT MD: Strobeck, John MD                           ACCT #: V007204067

The pros and cons or risks and benefits were described and discussed with the patient and I signed a consent with the patient.

PROCEDURE: The patient is brought to the operating room and under general endotracheal anesthesia was placed in a prone position on the Jackson table on the Kambin frame padded with gel pads, blankets and pillows. SCDs were placed on the legs bilaterally. A Foley catheter was placed. He had already been given vancomycin IV piggyback prior to the initial skin incision on the morning of surgery. We chose not to give more antibiotics because of cultures, and also because of his elevated BUN and creatinine. The patient's chest was padded IV bags. Care was taken not to disrupt or push on the defibrillator. Axilla free, arms padded with foam pillows, ulnar nerves free, neck in the neutral position controlled with the anesthesiology team. Legs padded with gel pads, blankets pillows. With that done his back was sterilely prepped and draped in usual fashion with Hibiclens scrub and Betadine paint. We then carried out an incision using about the upper 2/3 of the initial incision and another 2-3 inches above that to bring ourselves up to the L2 pedicle. A subperiosteal dissection was carried out. We brought into view the rod rate running from L4 down to S1 and the screws heads of L4. These were debrided of tissue and the fusion appeared to be solid and was over the laminar tissues bilaterally. We then exposed the lateral gutter of the transverse process of L4, L3, L2. Care was taken not to disrupt the capsular tissues of L2, 3. With our exposure complete we took intraoperative x-rays confirming the appropriate location of our exposure. We then carried out a laminectomy removing the superior half of lumbar 4 all the way down to just below its pedicle and all of L3 up to the bottom half of L2. By doing so we exposed the dural tube posteriorly. We found he had significant stenosis because of ligamentum flavum hypertrophy at L3, 4. Again this was not appreciated on the CT scan. We did not find any purulent structure or tissue within the canal. We then identified the pedicles and roots of the L3 and L4 bilaterally. With this done we retracted medially on the right side. There was a good amount of granulation scar tissue, we were able to free up the dura. We identified the disk, prepared it with coagulation with bipolar and then opened the disk. As soon as we entered the disk a copious amount of a yellow-colored fluid came out. We sent this for culture. We also sent the ligamentum flavum tissue for culture and tissue culture. We sent these for aerobic, anaerobic, fungus, tuberculosis and for Gram stain. We sent a good amount of liquid culture as well. With that done we then went into the disk, removed some disk tissue, but there was really not much disk tissue left. The end plates were also disrupted, you could feel they were soft with the Woodson instrument. With this done we irrigated the disk itself with bacitracin irrigation. With our decompression complete we irrigated the whole wound multiple times with bulb lavage. We then directed our attention to placing the screws. The screws were placed with the Midas burr starting each hole, the holes were then tapped and then checked with the ball-tip feeling instrument and then the screws placed. There were _____ screws and we placed them into L2 and L3. We placed slightly shorter screws in L3 not to put the screws into the vertebral body cancellous bone because of the active infection in that vertebral

This report is in a draft status until authenticated by the responsible provider.

PATIENT: R‍‍‍‍, B‍‍‍‍
ATT MD: Strobeck, John MD

UNIT #: M0690963
ACCT #: V007204067

body. All 4 screws had a very nice purchase. We checked the rod and screw construct below and it was solid. We then burred some of the fusion medially at L4 to fit our couplers. The large 10 degree angle couplers were then placed over the Howmedica rods from the rod going medial. We then bent our larger rod and extended it from our coupler up to the new pedicle screws of L3 and L2. The lock nuts were placed, tightened and then final tightening with a torque wrench. All lock nuts were then tightened with a torque wrench. Prior to doing this we decorticated the tissues of L2, L3, L4. This was in the lateral gutter and we took our mixture of both allograft and autograft, morselized bone and placed it in the lateral gutter and had a very nice amount of bone in that lateral gutter for fusion. With our fusion complete we felt that the fusion below L4-5 looked solid across the laminar tissues. We did our decompression with microscopic visualization. We placed our screws with direct visualization using C-arm radiography guidance and we could feel the screw pedicles with a Woodson instrument as well. With our decompression complete we did a final check, there was no bone on the dura. The dura appeared patent. There did not appear to be any significant canal impingement ventrally as well. The dura was adherent at midline to the annular tissue posterior longitudinal ligament we felt that to try to free this up would not create much more space and would only run the risk of a ventral tear which was of a concern because of the active infection in the patient's disk of L3-4. With this done we then closed. We placed a drain along midline over dura, exiting superiorly. This was a Hemovac drain. The adipose were closed with 2-0 Vicryl suture. The lumbodorsal fascia and scar tissue was closed with 0 Vicryl suture. Prior to our exposure we found the wire leads for the bone stimulator. These were removed down to the fusion level. We also found the stimulator itself in a pocket on the right side under the skin and removed that without difficulty. We then closed the skin with sterile staples. The wound was then dressed with Xeroform, 4x4 and Medipore tape.

ESTIMATED BLOOD LOSS: About 500 mL to 600 mL.

SPECIMENS: Cultures as mentioned above, along with the tissue specimen.

COMPLICATIONS: None.

CONDITION: The patient tolerated the procedure well and was sent to the recovery room in stable condition. Each of the screws were checked with x-ray. Each of the screws were checked with EMG testing and all had no breakout up to 20 mA. Before starting the surgery the patient showed that he had slowing on the right side of his legs on SEP monitoring. That remained stable through the entire case. EMGs remained stable through the case as well.

Arnold Criscitiello, MD

AC/MEDQ
DD: 10/14/2010 22:25:03

This report is in a draft status until authenticated by the responsible provider.

PATIENT: R█████, B█████  
ATT MD: Strobeck, John MD

UNIT #: M0690963  
ACCT #: V007204067

DT: 10/15/2010 07:53:28  
MEDQUIST 48/#683227  
CRC: ROGALSKI, BRIAN  /M0690963

cc:
:
:
:
:

# Exhibit B

HORIZON BLUE CROSS BLUE SHIELD
PO BOX 1301
NEPTUNE, NJ 07754

# HEALTH INSURANCE CLAIM FORM (1500)
APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE 08/05

*[Form fields — patient identifying information redacted]*

- 12. PATIENT SIGNATURE ON FILE — DATE: 08 02 2010
- 13. PATIENT SIGNATURE ON FILE
- 18. HOSPITALIZATION DATES: FROM 09 19 2010 TO 10 22 2010
- 19. OPERATIVE REPORT ATTACHED
- 20. OUTSIDE LAB? NO — $ CHARGES 0 00
- 21. DIAGNOSIS: 1. 738.4   2. 722.5   3. 722.93
- 23. PRIOR AUTHORIZATION NUMBER: *EMERGENCY

| # | Date From | Date To | POS | EMG | CPT/HCPCS | Modifier | Dx Ptr | $ Charges | Days | Rendering Provider ID |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 10 14 10 | 10 14 10 | 21 | Y | 22612 | 62 | 123 | 41000 00 | 1 | 1407823727 NPI |
| 2 | 10 14 10 | 10 14 10 | 21 | Y | 22614 | 62 | 123 | 11500 00 | 1 | 1407823727 NPI |
| 3 | 10 14 10 | 10 14 10 | 21 | Y | 63042 | 62 | 123 | 30750 00 | 1 | 1407823727 NPI |
| 4 | 10 14 10 | 10 14 10 | 21 | Y | 22842 | 62 | 123 | 21000 00 | 1 | 1407823727 NPI |
| 5 | 10 14 10 | 10 14 10 | 21 | Y | 20936 | 62 | 123 | 1500 00 | 1 | 1407823727 NPI |
| 6 | 10 14 10 | 10 14 10 | 21 | Y | 20930 | 62 | 123 | 1200 00 | 1 | 1407823727 NPI |

- 25. FEDERAL TAX I.D. NUMBER: 223430454 — **unpaid**
- 26. PATIENT'S ACCOUNT NO.: 79277.11
- 27. ACCEPT ASSIGNMENT: YES
- 28. TOTAL CHARGE: 106950 00
- 29. AMOUNT PAID: 0 00
- 30. BALANCE DUE: 106950 00
- 31. SIGNATURE OF PHYSICIAN OR SUPPLIER: DANIEL E WALZMAN MD — **unpaid** — 11 11 2010
- 32. SERVICE FACILITY LOCATION INFORMATION:
  VALLEY HOSPITAL – IP
  223 N VAN DIEN AVENUE
  RIDGEWOOD, NJ 07450
  1013912633
- 33. BILLING PROVIDER INFO & PH #: 201 342 2550
  NORTH JERSEY BRAIN & SPINE
  680 KINDERKAMACK ROAD SUITE 300
  ORADELL, NJ 07649
  1063537470

NUCC Instruction Manual available at: www.nucc.org
APPROVED OMB 0938-0999 FORM CMS-1500 (08/05)
42351 WCMS-1500CS

# Exhibit C

0302UCDSE0010013472

www.horizonblue.com

Date: 3/02/2011
PAGE 2 OF 4

Check No: 49661737
Payee ID 2234304540
NPI Code 1063537470

| DOS | RMK | POS | TOS | QTY | PROC | MOD | BILLED | NOT ALLOWED | REAS | ALLOWED | CO-INS | COPAY | DEDUCTBLE | CUST LIAB | REAS | OTHER CARR | PAID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

PRODUCT PD014

*Where is the rest of our claim?*

| DOS | RMK | POS | TOS | QTY | PROC | MOD | BILLED | NOT ALLOWED | REAS | ALLOWED | CO-INS | COPAY | DEDUCTBLE | CUST LIAB | REAS | OTHER CARR | PAID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/14/10 | U930 | 21 | 2 | 1 | 22842 | 62 | 21,000.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 21,000.00 | | 0.00 | 0.00 |
| 10/14/10 | U930 | 21 | 2 | 1 | 20936 | 62 | 1,500.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 | | 0.00 | 0.00 |
| 10/14/10 | U930 U930 | 21 | 2 | 1 | 20930 | 62 | 1,200.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,200.00 | | 0.00 | 0.00 |
| | | | | CLAIM TOTAL: | | | 23,700.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 23,700.00 | | 0.00 | 0.00 |

U93 THIS SERVICE IS DENIED BECAUSE AS PER CPT CODING GUIDELINES THERE IS A MODIFIER USED WHICH IS INVALID IN COMBINATION WITH THE PROCEDURE CODE.

NJ DIRECT - PROVIDER SERVICES: (800)624-1110

# Exhibit D

## Claim Status Details

### Patient Information

| | |
|---|---|
| Patient Name: | R███ B███ |
| Patient Account #: | 7927711 |
| Date Of Birth: | ███ |
| Claim Number: | 26110558910200 |

### Subscriber Information

| | |
|---|---|
| Subscriber Name: | Data not available from health plan |
| Subscriber ID: | ███ |

### Provider Information

| | |
|---|---|
| Billing Provider Name: | NORTH JERSEY BRAIN AND SPINE |
| Billing Provider Number: | 2234304540 |
| Billing Provider NPI: | 1063537470 |

### Claim Information

| | |
|---|---|
| Claim Status: | FINALIZED |
| Total Claim Amount: | $106,950.00 |
| Payee Name: | NORTH JERSEY BRAIN AND SPINE |
| Payment Amount: | $0.00 |
| Claim Received Date: | 02/23/2011 |
| Payment Method: | Check |
| Check/EFT Trace Number: | 049661737 |
| Check/EFT Effective Date: | 03/02/2011 |
| Image Number: | 901054357937P |
| Service Date Range: | 10/14/2010 - 10/14/2010 |
| Estimated Payment Date: | 03/02/2011 |
| Claim Message: | U930 |

*Unpaid surgery*

### Service Line Detail

| ID | Service Date Range | Procedure Code | Modifiers | Units | Status Code | Place of Service | Service Type | Message Code | Coinsurance Amount | Copay Amount | Deductible Amount | Charge Amount | Not Covered Amount | Paid Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 10/14/2010 - 10/14/2010 | 22612 | 62 | 1 | FINALIZED | 1 | 2 | X118 | $0.00 | $0.00 | $0.00 | $41,000.00 | $0.00 | $0.00 |
| 20 | 10/14/2010 - 10/14/2010 | 63042 | 62 | 1 | FINALIZED | 1 | 2 | X118 | $0.00 | $0.00 | $0.00 | $30,750.00 | $0.00 | $0.00 |
| 30 | 10/14/2010 - 10/14/2010 | 22842 | 62 | 1 | FINALIZED | 1 | 2 | U930 | $0.00 | $0.00 | $0.00 | $21,000.00 | $0.00 | $0.00 |
| 40 | 10/14/2010 - 10/14/2010 | 22614 | 62 | 1 | FINALIZED | 1 | 2 | X118 | $0.00 | $0.00 | $0.00 | $11,500.00 | $0.00 | $0.00 |
| 50 | 10/14/2010 - 10/14/2010 | 20936 | 62 | 1 | FINALIZED | 1 | 2 | U930 | $0.00 | $0.00 | $0.00 | $1,500.00 | $0.00 | $0.00 |
| 60 | 10/14/2010 - 10/14/2010 | 20930 | 62 | 1 | FINALIZED | 1 | 2 | U930 | $0.00 | $0.00 | $0.00 | $1,200.00 | $0.00 | $0.00 |

### Service Code Definitions

| Code Category | Code | Definition |
|---|---|---|
| Message Code | X118 | INTERNAL ADMINISTRATIVE DECLINE. NO EOB GENERATED. (X118) |
| Message Code | U930 | If you have questions or would like additional information about this claim, please contact the appropriate service area. |
| Place of Service | 1 | HOSPITAL, INPATIENT |
| Procedure Code | 22612 | LUMBAR SPINE FUSION |
| Procedure Code | 63042 | LAMINOTOMY, SINGLE LUMBAR |
| Procedure Code | 22842 | INSERT SPINE FIXATION DEVICE |
| Procedure Code | 22614 | SPINE FUSION, EXTRA SEGMENT |
| Procedure Code | 20936 | SPINAL BONE AUTOGRAFT |
| Procedure Code | 20930 | SPINAL BONE ALLOGRAFT |
| Service Type | 2 | SURGERY |

### Claim Code Definitions

| Code Category | Code | Definition |
|---|---|---|
| Claim Message | U930 | If you have questions or would like additional information about this claim, please contact the appropriate service area. |

### Disclaimer

Claims are based upon the most accurate data available at the time of request and are not a guarantee of payment by the Member's Benefit Plan.